IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

A.C.,[1]

        Plaintiff,

v.                                                                                    Case No. 20-2059-JWB

ANDREW M. SAUL,
*Acting Commissioner of Social Security,*

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits. The matter is fully briefed by the parties and the court is prepared to rule. (Docs. 7, 10, 13.) The Commissioner's decision is AFFIRMED for the reasons set forth herein.

**I. Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

---

[1] Plaintiff's initials are used to protect privacy interests.

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability.  20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  At step two, the agency will find non-disability unless the claimant shows that he or she has a severe impairment.  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  *Id*. at 750-51.  If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e).  The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); § 404.1520(f), (g).  At step four, the agency must determine whether the claimant can perform previous work.  If a claimant shows that he cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the

claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487.

## II. Background and Procedural History

Plaintiff applied for disability insurance benefits on April 25, 2016, when she was 38 years old. (Tr. at 262.) Plaintiff's claim was administratively denied both initially and upon reconsideration, prompting her to request a hearing before an Administrative Law Judge (ALJ). A hearing was held on July 31, 2018, and an unfavorable decision was issued on October 30, 2018. (*Id.* at 20-32.) Plaintiff exhausted her administrative remedies and has now appealed to this court.

At step one, the ALJ found Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of May 1, 2014, and through the date she was last insured on December 31, 2016. (*Id.* at 22.) At step two, the ALJ found Plaintiff suffered from the following severe impairments: circadian rhythm disruption; obesity; chronic obstructive pulmonary disease (COPD); premature-ventricular contractions (PVC); left ventricular non-compaction syndrome; headaches; history of edema; major depressive disorder; and anxiety disorder. (*Id.*) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or exceeded any impairment listed in the regulations. (*Id.* at 23-25.)

The ALJ next determined that Plaintiff has the RFC to perform light work, as defined in the regulations, with some physical limitations. The ALJ determined Plaintiff could lift and carry

20 pounds occasionally; stand or walk 6 hours in an 8 hour workday; sit up to 6 hours in an 8 hour workday; occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; Plaintiff cannot push and pull with her lower extremities; is limited to working in a temperature-controlled environment; must avoid exposure to pulmonary irritants, excessive vibrations, hazardous machinery, and unprotected heights. (*Id.* at 25.) Finally, Plaintiff is limited to unskilled, routine, repetitive tasks only.

In determining Plaintiff's RFC, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, but Plaintiff's statements as to the intensity, persistence, and limiting effects of the symptoms were not fully supported based on the medical evidence discussed in the decision. (*Id.* at 26.) The ALJ extensively reviewed medical and other evidence pertaining to Plaintiff's symptoms.

At step four, the ALJ found that Plaintiff was not able to perform past relevant work. (*Id.* at 30.) At step five, the ALJ found that given Plaintiff's age, education, work experience, and RFC, there were jobs in the national economy in significant numbers that she could perform. (*Id.* at 31.)

**III. Analysis**

Plaintiff contends that the RFC, with respect to both the mental limitations and physical limitations, is not supported by the evidence. In challenging the RFC, Plaintiff argues that the ALJ erred in his weighing of the medical opinions. The court will address Plaintiff's arguments in turn.

**A. Mental Limitations**

<u>Dr. Phelps</u>. Plaintiff argues that the ALJ erred in giving Dr. Phelps's opinion limited weight. Dr. Phelps is a consultative examiner who performed a mental status examination. Dr. Phelps met with Plaintiff on September 23, 2016. Dr. Phelps stated that she was provided disability

4

paperwork from Christopher Ebert and chart information from the University of Kansas Hospital. (*Id.* at 1145.) Dr. Phelps had Plaintiff perform various mental status tests. In summary, Dr. Phelps stated that Plaintiff presented a diagnostic challenge. Plaintiff performed well on the memory testing and Dr. Phelps opined that Plaintiff's "biggest hindrance" in working is her pressured speech. Dr. Phelps stated that "by [Plaintiff's] report, she is now too inconsistent in her level of functioning to perform even unskilled work on a full-time basis." (*Id.* at 1149.) Dr. Phelps went on to say that Plaintiff had excellent social skills and that she is capable of "working well with supervisors, coworkers, and the public." (*Id.*)

The ALJ gave limited weight to Dr. Phelps's opinion because it was based on a one-time examination and a review of limited records. Plaintiff argues that the ALJ erred in weighing this opinion because those reasons are not valid reasons to reject the opinion. (Doc. 7 at 58.) The court need not determine whether those reasons are valid or supported by the record because Plaintiff has not identified any opinions by Dr. Phelps that are inconsistent with the RFC. Dr. Phelps opined that Plaintiff's diagnosis was probable anxiety order due to a medical condition. (Tr. at 1149.) The ALJ found that Plaintiff had a severe impairment due to her anxiety disorder. (*Id.* at 22.)

Dr. Phelps then opined that she would expect Plaintiff to be capable of working well with supervisors, coworkers, and the public. (*Id.* at 1149.) This opinion is consistent with the RFC as it does not require a limitation regarding working with supervisors, coworkers, or the public. Dr. Phelps also stated that Plaintiff's pressured speech could be a hindrance to being successful and her impulsivity could be problematic. This statement, however, does not express an opinion concerning Plaintiff's "symptoms, diagnosis and prognosis, what [she] can still do despite the impairment(s), [or her] physical and mental restrictions." *Keyes-Zachary v. Astrue*, 695 F.3d 1156,

1164 (10th Cir. 2012) (quoting SSR 06–03p, 2006 WL 2329939, at *5 (Aug. 9, 2006)). These observations simply do not offer an assessment on her ability to work.

Plaintiff also asserts that Dr. Phelps's opined that Plaintiff was too inconsistent to perform unskilled work. (Doc. 7 at 58.) Dr. Phelps stated that "by [Plaintiff's] report, she is now too inconsistent in her level of functioning to perform even unskilled work on a full-time basis." (Tr. at 1149.) Reviewing the record, although the ALJ's decision referred to this statement by Dr. Phelps as an opinion, Dr. Phelps's statement was a recitation of Plaintiff's view of her condition that was relayed to Dr. Phelps during the consultation. *See Keyes-Zachary*, 695 F.3d at 1164 (finding that most of the report is a narrative summary of the plaintiff's statements). Plaintiff also refers to Dr. Phelps's statement regarding Plaintiff's capability to become aggressive. (Doc. 7 at 58.) Again, Dr. Phelps is summarizing a statement -- this one by Plaintiff's husband -- and this is not her opinion. (Tr. at 1149.)

Therefore, Plaintiff has not shown that the ALJ erred in evaluating Dr. Phelps's opinion.

Dr. Toll and Dr. Wigton. Plaintiff argues that the ALJ erred in the weighing of these opinions and by failing to explicitly adopt all of their opinions. Dr. Toll is a state agency psychologist who reviewed Plaintiff's medical records and determined that she had some moderate mental limitations. Dr. Wigton is also a state agency psychologist who reviewed the records and agreed with Dr. Toll on a reconsideration review.

Both performed a mental residual functional capacity assessment after reviewing the records. Dr. Toll determined that Plaintiff was moderately limited in the following: the ability to maintain attention and concentration for extended periods; the ability to sustain an ordinary routine without special supervision; and the ability to work in coordination with or in proximity to others without being distracted by them. (Tr. at 170.) Dr. Wigton noted the same moderate limitations.

(*Id.* at 187.) The narrative MRFC explanation states that Plaintiff was "noted to have excellent social skills during CE (consultative examination). She may have some reduced concentration due to anxiety. [Plaintiff] can perform at least 1-2 step tasks." (*Id.* at 170.) Dr. Wigton additionally stated that "[a] review of the records finds no further care for her reported memory issues, cognitive concerns, depression, anxiety, mood swings, or 'transient amnesia.' The prior assessment is reviewed and no change in limitation is warranted." (*Id.* at 187.) Notably, Dr. Toll opined that Plaintiff "appears capable of consistently functioning in a low skill, low stress work environment, and is probably capable of more complex tasks." (*Id.* at 165.)

The ALJ extensively review the medical records in this case. He stated that the record was inconsistent with more than moderate limitations in Plaintiff's ability to concentrate, persist, and maintain pace, or understand, remember or apply information. Although Plaintiff has been diagnosed with depression and anxiety, she has had normal psychological exams. (*Id.* at 28.) She has denied crying spells and noted only mild changes in her sleep and appetite due to depression. (*Id.* at 1341.) In evaluating step three, the ALJ noted that Plaintiff's mental impairments result in moderate limitations in understanding, remembering or applying information. However, the evidence shows that Plaintiff can generally learn, recall, and use information on a sustained basis. (*Id.* at 24.)

The ALJ discussed that the clinical signs and findings "reveal limited psychological limitations." (*Id.* at 28.) The ALJ cited to records showing that Dr. Gunn's records contain normal psychological exams. (*Id.*) (citing to 27F/12-15; 13F.) During the examination with Dr. Phelps, the ALJ noted that Plaintiff had some difficulty with impulse control and pressured speech but that her intellect was in the borderline range, she appeared socially comfortable, friendly, and cooperative with good eye contact. (*Id.*) Plaintiff also maintained a full affect, normal thoughts,

7

and a euthymic mood.  Plaintiff was able to recall four objects immediately and after a three-minute delay.  (*Id.* at 28, 1147-49.)  The ALJ found that the signs and findings "suggest the claimant has no limitations in her ability to interact with others and only moderate limitations in her ability to understand, remember or apply information and concentrate, persist, or maintain pace."  (*Id.* at 28.)  The ALJ stated that he accommodated these moderate limitations by limiting Plaintiff to unskilled, routine, repetitive tasks.  (*Id.* at 29.)

In reviewing the state agency psychological consultants' opinions, the ALJ noted that they opined that Plaintiff had moderate limitations in her ability to concentrate, persist, or maintain pace.  The ALJ gave the opinions "some weight" because the opinions are consistent with the record.  The ALJ also found that other evidence did not support the limitation of a one-to-two step task because Plaintiff's daily activities of driving her husband to work, cooking simple meals, and organizing her medical information suggests that Plaintiff can perform more than one-to-two step tasks.  (*Id.* at 29.)

Plaintiff argues that the ALJ erred in failing to adopt the one-to-two step task limitation and asserts that her daily activities are not inconsistent with the opinion that she can perform one-to-two step tasks.  A finding that an opinion is unsupported by the evidence or is inconsistent with the record constitutes good cause for assigning the opinion partial weight.  *See Arterberry v. Berryhill*, 743 F. App'x 227, 229 (10th Cir. 2018); *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987); 20 C.F.R. § 404.1527(c)(3), (4).  Although Plaintiff argues that her sporadic activities are not inconsistent with a one-to-two step limitation, the ALJ has sufficiently explained that the daily activities support a finding that Plaintiff can complete more than one-to-two step tasks. Plaintiff testified that she drives her husband to and from work three to five times a week, cooks simple meals, plays cards with friends, organizes her medical information, and creates her own crochet

8

patterns. (Tr. at 144, 149, 1146-47.) These activities suggest that Plaintiff is capable of performing tasks that encompass more than one-to-two steps. Plaintiff has not cited any authority that would suggest otherwise. Notably, even the medical records discuss how organized Plaintiff has been with her medical information. (*Id.* at 1221) (Plaintiff "has charted out every lab result including ANA, sed rate, CRP, etc. She is aware of every diagnosis possible considered and then refuted about her illness.") This court is not to reweigh the evidence and cannot "displace the agency's choice between two fairly conflicting views." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Next, Plaintiff argues that the ALJ erred in failing to discuss all of the moderate limitations identified by Dr. Toll and Dr. Wigton. Plaintiff points to Dr. Toll's moderate limitations of Plaintiff's ability to sustain an ordinary routine without special supervision and work in coordination with proximity to others without being distracted by them. These limitations were included in the MRFC1, which is the first part of the assessment. In the MRFC narrative, which is used to "explain in narrative form the sustained concentration and persistence capacities and/or limitations" that were identified in the MRFC1, Dr. Toll opined that Plaintiff had excellent social skills during the consultative exam but may have some reduced concentration due to anxiety. (Tr. at 170.) Dr. Toll further opined that Plaintiff could perform one-to-two step tasks. An ALJ may then rely on the narrative in formulating the RFC. *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015). "It is the narrative written by the psychiatrist or psychologist... that adjudicators are to use as the assessment of RFC." *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015).

Here, the ALJ gave weight to the narrative opinion that Plaintiff will have some limited concentration by limiting Plaintiff to unskilled, routine, repetitive tasks. The ALJ rejected the limitation to one-to-two step tasks. Plaintiff essentially argues that the ALJ erred in failing to

9

specifically address the moderate limitations and in not adopting them.  But, those limitations are part of the worksheet used to record summary conclusions.  The Tenth Circuit has instructed that the narrative cannot be considered part of the substantial evidence if the narrative contradicts the moderate limitations identified or fails to describe those limitations.  *Carver*, 600 F. App'x at 619.  Plaintiff does not make this argument here.  In any event, the ALJ's limitation to unskilled, routine, and repetitive tasks is supported by Dr. Toll's narrative opinion in the Psychiatric Review Technique additional explanation.  Dr. Toll opined that, based on the records, Plaintiff had the ability to consistently function in a low skill environment, and that she is probably capable of more complex tasks.  (Tr. at 165.)   The Tenth Circuit has held that an ALJ can account for moderate limitations by "limiting the claimant to particular kinds of work activity."  *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016).  In *Smith*, the plaintiff challenged the failure to include the moderate limitations.  But, the psychologist opined that the plaintiff could engage in work that was limited in complexity and could manage certain social settings.  The ALJ arrived at a similar assessment.  The Tenth Circuit held that the ALJ did not err by failing to repeat the moderate limitations because the ALJ incorporated them by limiting the work-related activities, which was supported by the psychologist's  opinion.  *Id.* at 1268-69.  This is the case here.  The ALJ's limitation to unskilled work is supported by Dr. Toll's opinion that Plaintiff can engage in low skill work.  Moreover, although Plaintiff argues that she is entitled to a limitation regarding special supervision and working with others, Plaintiff fails to cite to any evidence in the record that would show that such a limitation is necessary.  *See Fulton v. Colvin*, 631 F. App'x 498, 506 (10th Cir. 2015).  Therefore, the court rejects Plaintiff's contention that the ALJ erred in not including more limitations in the RFC.

10

Plaintiff also points to Dr. Wigton's notations on the B Criteria listings. Plaintiff argues that the ALJ erred in failing to explain why he did not include Dr. Wigton's opinion that Plaintiff was mildly limited in interacting socially and adapting or managing oneself. (Doc. 7 at 61.) However, those mild limitations do not include any work related limitations and refer to the MRFC for additional explanation. (Tr. at 181-82.) This court has already addressed the ALJ's application of the narrative in the MRFC and the moderate limitations opined by Dr. Toll which were adopted by Dr. Wigton. Dr. Wigton did not provide any further limitations and affirmed Dr. Toll's assessment as written. Notably, Dr. Wigton stated that Plaintiff had not sought any further care for her reported mental health issues. (*Id.* at 187.) The ALJ did not err in failing to include these mild limitations. Moreover, the ALJ specifically found that Plaintiff did not have any limitations in adapting and management of oneself and the ability to interact with others. (*Id.* at 24.)

Finally, Plaintiff argues that the RFC is inconsistent with the ALJ's step three finding that Plaintiff had moderate limitations in concentration, persistence, or pace. (Doc. 7 at 61.) Social Security Ruling (SSR) 96–8p states that "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment [than at steps two and three] by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings." SSR 96–8p, 1996 WL 374184, at *4 (July 2, 1996). The ALJ complied with this requirement as he addressed Plaintiff's daily activities, medical records, and the opinions concerning the mental limitations throughout his decision. The ALJ also stated that he accommodated these limitations by limiting Plaintiff to unskilled, routine, repetitive tasks. (Tr. at 29.)

The court finds that the ALJ did not err in determining Plaintiff's mental RFC and evaluating the opinion evidence.

11

### B. Physical Limitations

Plaintiff objects to the ALJ's weighing of the opinions of the state agency physicians and her treating physician. Plaintiff also asserts that the ALJ failed to comply with the agency's regulation in considering her obesity. A review of the ALJ's treatment of the opinions and the evidence regarding Plaintiff's severe physical impairments is necessary prior to evaluating Plaintiff's arguments.

There were two opinions by state agency physicians, Dr. Debroy and Dr. Shumate. The record shows that Drs. Debroy and Shumate received Plaintiff's medical records and recounted the same in their summary of the evidence. (Tr. at 158-169, 175-86.) Plaintiff's allegations of impairments included cardiac issues, PVCs, chronic headaches, hormonal migraines, explosive diarrhea, circadian rhythm disruption, pitting edema, loss of mobility, thermoregulation issues, cognitive issues, mood swings, and irregular menses. (*Id.* at 158-59.) Plaintiff's severe impairments found by the physicians included disorders of adrenal and thyroid glands, cardiomyopathy, gastrointestinal disorders, circulatory system diseases, and anxiety disorders. (*Id.* at 163, 181.) Dr. Debroy exhaustively discussed the record and noted that the RFC was completed "with generous restrictions for impairments and alleged limitation[s]." (*Id.* at 169.) He opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; sit and stand/walk six hours each in an eight-hour day; could never climb ladders, ropes or scaffolds; and should avoid concentrated exposure to extreme temperatures and all exposures to hazards. (*Id.* at 166-68.) On reconsideration, Dr. Shumate stated that Plaintiff related ongoing gastrointestinal and cardiac concerns. Dr. Shumate stated that the studies in the file find no definitive basis for the reported complaints regarding the gastrointestinal issues. With respect to the cardiac issues, Plaintiff claimed that there were extensive studies at Mayo Clinic but Dr. Shumate noted that they

12

do not appear to have happened but instead they visited with her regarding a "poorly defined connective tissue disease and reported but unfounded GI concerns." (*Id.* at 186.) Dr. Shumate agreed with Dr. Debroy's limitations.

After extensively discussing the medical records, the ALJ reviewed the opinions. With respect to Dr. Shumate and Dr. Debroy's opinions, the ALJ gave those opinions great weight. The ALJ found that the opinions were consistent with the "generally normal objective testing, the clinical signs and findings, including a normal gait, variable levels of edema, and clear lungs. These opinions are also consistent with the claimant's activities of daily living, including her ability to perform light household chores, shop with her husband, and drive." (*Id.* at 29.) The ALJ found additional limitations for postural activity and environmental factors after receiving updated evidence at the hearing.

Plaintiff's primary provider, Dr. Gunn, also provided an opinion by letter. Dr. Gunn opined that Plaintiff has been unable to work due to her many conditions. With respect to her edema, Dr. Gunn opined that she has +4 pitting edema from her thigh through her feet which results in her not being able to do any pushing, pulling, reaching, lifting, bending, or carrying more than five to twelve pounds, being unable to walk or stand more than fifteen minutes, perform any repetitive motion, grip an object, including being unable to grip a phone, and cannot climb stairs. (*Id.* at 1345.) Dr. Gunn included these same restrictions as a result of Plaintiff's cardiac symptoms and due to her other pain. Dr. Gunn further opined that Plaintiff's fatigue and gastrointestinal symptoms keep her from doing any work requiring deadlines and do not allow for naps ranging from two to twelve hours in duration. (*Id.*)

The ALJ assigned no weight to Dr. Gunn's opinion, finding that his restrictions were wholly inconsistent with the medical record as a whole and with his own treatment notes. The

13

ALJ further found that the "extreme limits were also inconsistent with the claimant's activities of daily living and conservative treatment history." (*Id.* at 30.)

<u>Dr. Debroy and Dr. Shumate</u>.  Plaintiff argues that the ALJ failed to develop the record regarding Plaintiff's limitations as to her severe impairments of circadian rhythm disruption, COPD, left ventricular non-compaction syndrome, headaches, or edema.  Essentially, Plaintiff argues that Dr. Debroy and Dr. Shumate did not specifically address limitations directly related to these severe impairments and that the record should have been fully developed as to these impairments.  (Doc. 7 at 63.)  Plaintiff asserts the record was not developed as to these impairments.  The court disagrees.

As discussed, Dr. Debroy and Dr. Shumate were provided with extensive medical records and they discussed those records in their reports.  Moreover, the record shows that these physicians were aware of Plaintiff's physical complaints which included these impairments.  Plaintiff apparently is arguing that their opinions must tie the limitations to each severe impairment.  And, that because there is not a direct link to the severe impairment, the ALJ has erred because he has relied on his own medical expertise.  (*Id.*)  Plaintiff, however, does not cite any authority that requires a medical source to match the limitations to the severe impairments.  *See Davidson v. Berryhill*, No. CV 17-2139-JWL, 2018 WL 1412064, at *12 (D. Kan. Mar. 20, 2018).  Drs. Debroy and Shumate are state agency medical consultants who are experts in Social Security disability evaluations.  *Id.*  Plaintiff has failed to point to any evidence that would support a finding that Dr. Debroy or Dr. Shumate failed to consider these conditions given their review of the evidence and Plaintiff's allegation as set forth in their reports.  The ALJ was not required to further develop the record on these severe impairments as the record contained extensive evidence regarding Plaintiff's medical treatment pertaining to these impairments.

Dr. Gunn.  Plaintiff contends that the ALJ erred in assigning no weight to Dr. Gunn's opinion, arguing that the opinion was rejected only because Plaintiff did not continuously have +4 edema and her mental status exams were normal.  Plaintiff also argues that the ALJ erred in some of his citations to the normal mental status findings.

An ALJ should "[g]enerally ... give more weight to opinions from [claimant's] treating sources."  20 C.F.R. § 404.1527(c)(2).  In evaluating a treating physician's opinion, the ALJ is to conduct a two-step process.  At the first step, the ALJ must determine if the opinion is entitled to "controlling weight."  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  A treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record."  20 C.F.R. § 404.1527(c)(2).  At the second step, if the opinion is not entitled to controlling weight, the ALJ is to give good reasons for the weight given after applying certain factors.  *Krauser*, 638 F.3d at 1330-31.  The ALJ must provide specific and legitimate reasons for rejecting the opinion.  *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).  A finding that an opinion is unsupported by the evidence or is inconsistent with the record constitutes good cause.  *See Arterberry v. Berryhill*, 743 F. App'x 227, 229 (10th Cir. 2018); *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987); 20 C.F.R. § 404.1527(c)(3), (4).

Here, the ALJ assigned no weight to Dr. Gunn's opinion after finding that the opinion was inconsistent with the medical records and treatment notes, unsupported by the examinations, inconsistent with Plaintiff's daily activities and her conservative treatment history.  The ALJ extensively discussed Plaintiff's edema in his opinion, finding that although Plaintiff's primary provider, Dr. Gunn, stated that she has continuously exhibited 4+ pitting edema throughout her body since 2014, the records do not support this opinion.  (Tr. at 30.)  In January 2014, Plaintiff's

15

edema measured only 1+ and it was not described as pitting edema. (*Id.* at 26, 880.) In October 2015, the Mayo Clinic examiners observed 2+ pitting edema but it was absent only two months later. (*Id.* at 530, 577.) The ALJ went on to discuss that Plaintiff had reported her edema resolved when she restarted smoking, and in April, May and July 2016, exhibited no more than trace edema. (*Id.* at 26, 834, 1017, 1125.) In August 2016, she had minimal edema in her fingers. (*Id.* at 1225.) There were photographs from 2015 that reportedly showed 4+ edema in her legs but this has not been documented by a provider. (*Id.* at 26.) Plaintiff's gait was generally unaffected by her lower extremity edema. (*Id.*) The court finds that the ALJ's determination that Dr. Gunn's opinion is not supported by his own records is consistent with the evidence cited by the ALJ.

Plaintiff argues that the ALJ's only basis for rejecting the physical limitations set forth in Dr. Gunn's opinion is due to Dr. Gunn's statement regarding Plaintiff's +4 edema and her mental status findings, which were found to be not supported by his own records.[2] The ALJ's decision, however, provides more reasons. The ALJ stated that the extreme limits in Dr. Gunn's opinions are inconsistent with medical records, conservative treatment, and Plaintiff's daily activities. Although the ALJ specifically cited to the record regarding the edema and normal mental status in the paragraph discussing Dr. Gunn's opinion, that was not the only place in the decision where the ALJ discussed the medical evidence.

In *Best-Willie v. Colvin*, 514 F. App'x. 728,733 (10th Cir. 2013), the Tenth Circuit stated that a lack of "contemporaneous discussion" of the evidence by the ALJ in discounting an opinion does not mean that the court cannot review the decision when the ALJ has "thoroughly discussed

---

[2] Plaintiff argues that the ALJ's pinpoint to the citations are incorrect for three of the five citations regarding Plaintiff's mental health status. (Doc. 7 at 65.) The citations, however, are included after a sentence discussing her edema and her normal mental health status exam. The three exhibits that Plaintiff complains about all relate to Plaintiff's edema and support the ALJ's finding that it was not +4 in the medical records. (*See* Tr. at 30, 1017, 1125, 1224-25.) Therefore, the ALJ did not incorrectly cite to the record.

16

the medical evidence in the record." As noted previously, the ALJ extensively discussed the medical records and Plaintiff's complaints. It was not limited to one paragraph. The court must be able to meaningfully review the decision of the ALJ. The court can do so when the ALJ has discussed the medical evidence and testimony. Although a contemporaneous discussion can be helpful to this court during its review, it does not mean that this court is unable to review the ALJ's decision. *See id.*

In this case, the ALJ extensively discussed the medical evidence. In addition to the discussion regarding the edema, the ALJ discussed the medical records with respect to Plaintiff's left ventricular non-compaction syndrome. This can be associated with premature ventricular contractions ("PVCs"), shortness of breath, and episodes of near syncope. The ALJ noted that Plaintiff met with a cardiologist and had several tests in November 2016. A Holter monitor confirmed 95 PVCs but further testing showed that her left ventricular functions were completely normal. (*Id.* at 1273.)

With respect to her headaches, the ALJ discussed the medical records showing that they were attributed to hormonal imbalances and had improved by December 2016. Moreover, she had not sought emergent treatment for the headaches or undergone intensive treatment. (*Id.* at 27.) With respect to her COPD, pulmonary function testing only revealed no more than "possible" early obstructive pulmonary disease and her related levels remained in normal limits. (*Id.* at 27, 1065.) Again, Plaintiff has not required emergent treatment or hospitalization. The ALJ noted that the findings have been normal and Plaintiff has had conservative treatment. (*Id.* at 27.)

This court cannot reweigh the evidence. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Rather, it must review the sufficiency of the evidence and cannot "displace the agency's choice between two fairly conflicting views." *Oldham*, 509 F.3d at 1258. The court finds that the

ALJ properly weighed Dr. Gunn's opinion and sufficiently explained his reasons for assigning the opinion no weight.

Last, Plaintiff argues that the ALJ erred in not considering her severe impairment of obesity. The ALJ must assess the effects of Plaintiff's obesity in conjunction with Plaintiff's other impairments and "explain how [h]e reached [his] conclusions on whether obesity caused any physical or mental limitations." *Baker v. Barnhart*, 84 F. App'x 10, 14 (10th Cir. 2003) (citing SSR 02-01p, 2002 WL 34686281 at *6-7). While the ALJ "may not make assumptions about the severity or functional effects of obesity combined with other impairments," the ALJ "must evaluate each case based on the information in the case record." *DeWitt v. Astrue*, 381 F. App'x. 782, 785 (10th Cir. 2010) (citing SSR 02-1p, 2002 WL 34686281 at *6).

In this case, the ALJ discussed Plaintiff's obesity and stated that there may be additional limitations in exertional functions, postural functions, and the ability to tolerate heat, humidity, or other hazards due to the obesity. The ALJ then cited to SSR 02-01p and stated that he had considered the effects of Plaintiff's obesity when determining her RFC. (Tr. at 27-28.) As pointed out by the Commissioner, the ALJ did include additional postural limitations and environmental limitations in his RFC. (*Id.* at 29.) Although the ALJ could have provided additional discussion, the ALJ's decision states that he reviewed the records and found that Plaintiff made no complaints regarding knee pain prior to the date last insured and her gait has generally remained unaffected. The ALJ also stated that he considered her obesity in accordance with the regulation. This court's "general practice ... is to take a lower tribunal at its word when it declares that it has considered a matter." *Arles v. Astrue*, 438 F. App'x 735, 740 (10th Cir. 2011) (citation omitted) (discussing the ALJ's treatment of obesity). Moreover, Plaintiff has not pointed to any evidence showing that her obesity further limits her ability to perform a restricted range of work. *Id.* Plaintiff also argues

18

that the state physicians did not consider her obesity. However, as noted above, the state agency physicians reviewed all of Plaintiff's medical records when opining regarding Plaintiff's limitations.

This court must affirm an ALJ's decision if substantial evidence supports that decision. *See Tarpley v. Colvin*, 601 F. App'x. 641, 643 (10th Cir. 2015). Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.* That much exists in this case.

**IV. Conclusion**

The Commissioner's decision is AFFIRMED.

The clerk is directed to enter judgment in accordance with this order.

IT IS SO ORDERED this 9th day of December 2020.

\_\_\_\_\_s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE